UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

U.S. COMMODITY FUTURES
TRADING COMMISSION,

    Plaintiff,

v.

GREGORY CHRISTOPHER EVANS,

    Defendant.

Case No. 14-0839-CV-W-ODS

## CONSENT ORDER OF PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF AGAINST GREGORY CHRISTOPHER EVANS

### I. INTRODUCTION

On September 24, 2014, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against Defendant Gregory Christopher Evans ("Evans" or "Defendant") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1-190.10 (2014).

### II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant without a trial on the merits or any further judicial proceedings, Defendant:

1. Consents to the entry of this Consent Order of Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Gregory Christopher Evans ("Consent Order");

2. Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3. Acknowledges service of the summons and Complaint;

4. Admits the jurisdiction of this Court over him and the subject matter of this action, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5. Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action, pursuant to the Act, 7 U.S.C. §§ 1-26 (2012);

6. Admits that venue properly lies with this Court, pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7. Waives:

    (a) Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the CFTC in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2014), relating to, or arising from, this action;

    (b) Any and all claims he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

    (c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from this action;

8. Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant now or in the future resides outside the jurisdiction of this Court;

9. Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

10. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order are without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the CFTC is not a party. Defendant shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

11. By consenting to the entry of this Consent Order, neither admits nor denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which he admits. Further, Defendant agrees and intends that the allegations contained in the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (a) any current or subsequent

bankruptcy proceeding filed by, on behalf of, or against Defendant; (b) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a (2012), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1-3.75 (2014); and/or (c) any proceeding to enforce the terms of this Consent Order. Defendant does not consent to the use of this Consent Order, or the Findings of Fact and Conclusions of Law in this Consent Order, as the sole basis for any other proceeding brought by the Commission;

12. Agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 45 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

13. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant in any other proceeding.

### III. FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, civil monetary penalty, and equitable relief, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS**:

**A. Findings of Fact**

    **(1) The Parties To This Consent Order**

14. Plaintiff United States Commodity Futures Trading Commission is an independent federal regulatory agency, charged by Congress with administering and enforcing

the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1-190.10 (2014).

15. Defendant Gregory Christopher Evans is a resident of Kansas City, Missouri, and between at least January 2013 through July 21, 2013 (the "relevant period"), was employed as a risk management consultant at a large futures commission merchant ("FCM") and provisionally registered swap dealer ("Swap Dealer") (the "Firm") with offices located in Kansas City, Missouri. Evans was registered as an associated person ("AP") of the FCM from November 21, 2012, until his resignation on July 21, 2013, and acted as an AP of the Swap Dealer during the period January 1, 2013, until his resignation on July 21, 2013.

**(2)  Fraudulent Unauthorized Trades**

16. As a risk management consultant, Evans entered into bilateral energy swap agreements on behalf of the Firm with the Firm's customers as counterparties. To hedge – or reduce – the risk from the swap agreements, Evans entered into futures trades on behalf of the Firm on a futures exchange using the Firm's central trading account.

17. Evans was responsible for both discretionary and non-discretionary customer accounts. A discretionary account is an arrangement by which the owner of the account provides written power of attorney to someone else, usually the broker, to buy and sell without prior approval of the account owner. A non-discretionary account is an arrangement by which a broker must obtain prior approval from the account owner to buy and sell a particular contract.

18. During the relevant period, Evans executed a strategy to hedge fluctuations in retail gasoline prices on behalf of a discretionary customer ("Customer 1").

19. During the spring of 2013, Evans's discretionary trading strategy became increasingly unprofitable and resulted in significant losses for Customer 1.

20. To reduce and/or hide the losses from Customer 1 and bolster his own compensation, Evans applied reverse mark-ups to transactions for Customer 1 and a customer with a non-discretionary account ("Customer 2") and developed a scheme to engage in and conduct unauthorized trades on behalf of Customer 2.

21. The unauthorized trades entered into by Evans were bilateral NYMEX RBOB Euro Swaps, which are swaps where two counterparties agree to exchange payment in the future based on the change in price of a commodity contract, the NYMEX RBOB Euro Futures contract.

22. The final price charged by the Firm to its customers for each bilateral energy swap agreement was based on the price of the underlying futures contract, along with any "mark-up" or "reverse mark-up." A "mark-up" is the difference between the price the Firm paid for a futures contract and the price charged the customer for the corresponding bilateral swap agreement. Thus, a mark-up results in a profit for the Firm. Conversely, a "reverse mark-up" represents a better price for the customer for the bilateral swap agreement than the price actually paid by the Firm for the corresponding futures contract. A reverse mark-up results in a gain to the customer and a corresponding loss to the Firm.

23. As set forth in the Complaint, from May 23, 2013, to July 19, 2013, Evans knowingly executed 30 unauthorized trades on behalf of Customer 2 that, after mark-ups and reverse mark-ups, resulted in approximately $1,213,578.94 in trading losses to Customer 2.

24. Unable to recoup these losses, Evans resigned from the Firm on July 21, 2013. Subsequently, the Firm compensated Customer 2 in full for the losses incurred as a result of Evans's unauthorized trades.

**B.     Conclusions of Law**

   **(1)     Jurisdiction and Venue**

   25.     This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the CFTC may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

   26.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the acts and practices in violation of the Act occurred within this District.

   **(2)     Fraud by Unauthorized Trading in Violation of Sections 4b(a)(2) and 6(c)(1) of the Act and Regulation 180.1**

   27.     Section 4b(a)(2)(A), (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2012), makes it unlawful for any person, in or in connection with any order to make, or the making of, any swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market

> (A)  to cheat or defraud or attempt to cheat or defraud the other person;
>
> ∗∗∗
>
> (C)  willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or . . . with the other person[.]

7

28. Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), provides, in relevant part:

> It shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap … any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate . . .

29. Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2014), was promulgated pursuant to Section 6(c)(1) of the Act and provides, in relevant part:

> It shall be unlawful for any person, directly or indirectly, in connection with any swap … to intentionally or recklessly:
>
> (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;
>
> (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading;
>
> (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

30. By the conduct described in the foregoing paragraphs, Defendant violated Sections 4b(a)(2)(A), (C), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A), (C), 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2014), by knowingly: (i) effecting swap transactions for Customer 2's non-discretionary account without obtaining Customer 2's authorization to effect those transactions; and (ii) willfully omitting material facts, including but not limited to, the swap transactions Evans effected, the profits and losses incurred by those transactions, and the magnitude of the risks to which Evans subjected the customer's account.

### (3) Fraud in Violation of the External Business Conduct Standards for Swap Dealers (Regulation 23.410(a)(3))

31. Regulation 23.410(a)(3) makes it unlawful for any swap dealer or major swap participant to "engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative." 17 C.F.R. § 23.410(a)(3) (2014).

32. Regulation 23.401(d) defines "swap dealer" for the purposes of the Business Conduct Standards, *see generally* 17 C.F.R. pt.23, subpart H (2014), as "any person defined in Section 1a(49) of the Act and § 1.3 of this chapter and, as appropriate in this subpart, any person acting for or on behalf of a swap dealer, including an associated person defined in Section 1a(4) of the Act." 17 C.F.R. § 23.410(d) (2014). Section 1a(4) of the Act defines an "associated person of a swap dealer" in relevant part as "a person who is associated with a swap dealer . . . as . . . [an] employee, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves (i) the solicitation or acceptance of swaps." 7 U.S.C. § 1(a)(4)(A) (2012).

33. The Firm provisionally registered with the CFTC as a swap dealer effective December 31, 2012.

34. During the relevant period and in connection with the facts alleged herein, Defendant acted as an AP of a swap dealer because he engaged in the solicitation or acceptance of swaps on behalf of the Firm. *See* 7 U.S.C. § 1a(4)(A) (2012).

35. By the conduct described in the foregoing paragraphs, Defendant violated Regulation 23.410(a)(3), 17 C.F.R. § 23.410(a)(3) (2014), by: (i) knowingly effecting swap transactions with a counter-party, Customer 2, without obtaining its authorization to effect those transactions; and (ii) willfully omitting material facts, including, but not limited to, the swap

transactions he effected, the profits and losses incurred by those transactions, and the magnitude of the risks to which he subjected Customer 2's account.

### (4) Unauthorized Swap Transactions in Violation of Regulation 166.2

36. Regulation 166.2, 17 C.F.R. § 166.2 (2014), makes it unlawful for an AP of an FCM to effect a transaction in a commodity interest for a customer account unless, before the transaction: (i) the customer has specifically authorized the AP to effect the transaction by specifying the precise commodity interest to be purchased or sold and the exact amount, or (ii) the customer has executed a written authorization (e.g., a "power of attorney") for the AP to trade without the customer's specific authorization.

37. As set forth in Regulation 1.3(yy)(4), 17 C.F.R. § 1.3(yy)(4) (2014), a commodity interest includes swaps as defined in the Act. Regulation 166.2, 17 C.F.R. § 166.2 (2014), requires that APs of FCMs effect only those transactions related to commodity interests that have been specifically authorized.

38. By the conduct described in the foregoing paragraphs, Defendant violated Regulation 166.2, 17 C.F.R. § 166.2 (2014), by effecting swap transactions for Customer 2's non-discretionary account without obtaining Customer 2's authorization to effect those transactions, while registered as an AP of an FCM.

39. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendant will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT**:

40. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendant is permanently restrained, enjoined, and prohibited from directly or indirectly:

>  (a)    Cheating, defrauding, or deceiving, or attempting to cheat, defraud, or deceive other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person in violation of Section 4b(a)(2)(A), (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2012);
>
>  (b)    Using or employing, or attempting to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a)(1), 17 C.F.R. § 180.1(a) (2014);
>
>  (c)    While acting as an AP of an FCM, effecting a transaction in a commodity interest for a customer account unless, before the transaction:  (i) the customer has specifically authorized the AP to effect the transaction by specifying the precise commodity interest to be purchased or sold and the exact amount, or (ii) the customer has executed a written authorization (*e.g.*, a "power of attorney") for the AP to trade without the customer's specific authorization, in violation of Regulation 166.2, 17 C.F.R. § 166.2 (2014);

(d) While acting as an AP of a swap dealer, engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative in violation of Regulation 23.410(a)(3), 17 C.F.R. § 23.410(a)(3) (2014).

41. Defendant is also permanently restrained, enjoined, and prohibited from directly or indirectly:

(a) Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

(b) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014)) for his own personal account or for any account in which he has a direct or indirect interest;

(c) Having any commodity interests traded on his behalf;

(d) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(e) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(f) Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

(g) Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)),

12
Case 4:14-cv-00839-ODS   Document 27   Filed 06/16/15   Page 12 of 16

registered, exempted from registration or required to be registered with the CFTC

except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

### V.   CIVIL MONETARY PENALTY

42.   Defendant shall pay a civil monetary penalty in the amount of one million two hundred thousand dollars ($1,213,578.94) ("CMP Obligation"), plus post-judgment interest.  Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

43.   Defendant shall pay his CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial

Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street NW, Washington, DC 20581.

44. Partial Satisfaction: Acceptance by the CFTC of any partial payment of the Defendant's CMP Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

## VI. MISCELLANEOUS PROVISIONS

45. Notice: All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to CFTC:

>Director of Enforcement
>U.S. Commodity Futures Trading Commission
>1155 21st Street NW
>Washington, DC 20581

Notice to Defendant Gregory Evans:

>Gregory Evans
>6709 N. Fisk Ave.
>Kansas City, MO 64151

All such notices to the CFTC shall reference the name and docket number of this action.

46. Change of Address/Phone: Until such time as Defendant satisfies in full his CMP Obligation as set forth in this Consent Order, Defendant shall provide written notice to the CFTC by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

47. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to

amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

48. Invalidation: If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

49. Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

50. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant to modify or for relief from the terms of this Consent Order.

51. Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendant, upon any person under his authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendant.

52. Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall

become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

53.     Contempt:  Defendant understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Consent Order of Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief forthwith and without further notice.

IT IS SO ORDERED.

DATE: June 16, 2015

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT